## Tharp *against* Smith.

In an action upon a mortgage in the name of the mortgagee, for the use of a third person, against the mortgagor, brought at the instance of a person for whose use it was sued, the mortgagor protested against his claim for whose use the suit was brought, and against the suit itself. And it appearing upon the trial that the mortgagee was himself entitled to the money secured by the mortgage, it was held that a judgment for the plaintiff was erroneous.

WRIT of error to *Tioga* county.

This was a *scire facias* upon a mortgage by Michael R. Tharp for the use of Silas Billings against Russel Smith, with notice to Stephen Burlingame, terre-tenant. The facts necessary to understand the only principle in the case, are sufficiently stated in the opinion of the court.

*Parsons*, for plaintiff in error.
*Williston*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—George Strawbridge was the owner of certain tracts or parcels of land, situate in the county of Tioga. Strawbridge and wife, on the 24th of January 1822, among other matters, convey all the pieces or parcels of land lying in the said county, between the farms on the Cowenesque river and line of the state of New York, to Jonathan D. Ledyard. On the 6th of March 1822, Ledyard and wife convey the said property to Silas Billings. On the 14th of September 1822, George Strawbridge conveys all his property to Henry Simpson and John Linn, for the benefit of his creditors, who for the consideration of 350 dollars make the assignment, conveyance or release of the 30th of April 1828. By this deed, the assignees, after confirming the conveyance made by Strawbridge to Ledyard, and Ledyard to Billings, also assign to him each and every mortgage, judgment, bond, note, contract, debt, or sum of money, the consideration whereof has arisen out of, or been connected with, the sale of any part or parts of said tract or parcels of land, &c. On the 8th of August 1817, George Strawbridge and Michael W. Tharp enter into an article of agreement, in which, after

[Tharp v. Smith.]

reciting that the said George Strawbridge was the owner of a number
of mortgages, bonds and judgments arising out of the sale of lands in
Tioga township, in the intention of a transfer to said Tharp, it is co-
venanted and agreed between the said parties that a deduction of
25 per cent shall be made from 8494 dollars 64 cents, the estimated
amount of said bonds, mortgages, &c., by which is left the sum of
6371 dollars 33 cents, to be paid, 1000 dollars at the signing of the
article, 2000 dollars on the 1st of November next ensuing, 1685 dol-
lars 87 cents on the 1st of May next, and the remaining sum of
1684 dollars 86 cents on the 1st of November 1818, at the city of
Philadelphia, in notes then current at their par value, or in specie.
At the time of the last payment, the said George, for himself and
his heirs, covenants and agrees to assign over and transfer to the
said Michael his whole right, title and interest to the said security,
by a full and sufficient conveyance, and in the mean time to autho-
rize the said Michael to collect, receive and apply to his own use all
or any part of the moneys due under the said securities, by a full
and ample power of attorney, and the possession of the said securi-
ties.   The parties then state the object of the agreement to be, that
the said George shall make to the said Michael a discount of 25 per
cent for prompt payment ; it is further agreed, that in case of non
payment for one month after the times and dates therein before men-
tioned, damages shall accrue, and at the rate of said discount or of 33⅓
per cent on the several payments, until the amount of the original
sum first above mentioned.   They further agree that the said instal-
ments, &c., shall bear an interest of six per cent from the time of
signing, &c.   In pursuance of said agreement, Strawbridge delivered
to Tharp the several securities then referred to, and also executed a
letter of attorney to him dated the 8th of August 1817.   Among
the securities delivered by Strawbridge to Tharp was a letter dated
8th of August 1813, for 921 dollars 25 cents—Bethlehem Thompson
to George Strawbridge.   A *scire facias* was sued out on this mortgage,
on which a judgment was had the 17th of February 1818.   A *levari
facias* was then issued, on which the sheriff on the 16th of Septem-
ber 1818 returned that " he had sold the within tract to Michael R.
Tharp for 1000 dollars," for which the sheriff made him a deed.   On
the 25th of June 1819, Tharp conveyed one hundred and forty-four
acres twelve perches, part of the above property, to Russel Smith,
for the consideration of 1895 dollars.   And the same day Russel
Smith gave a mortgage on said property to secure the payment of
997 dollars 4 cents, with interest, &c. ; also another mortgage of the
same date for 898 dollars 16 cents, with interest, &c.   On the 30th
of July 1830, Silas Billings suggests, on the margin of the record,
that these mortgages and the moneys therein mentioned are for his
use.   To enforce this claim, these suits are brought against Russel
Smith, the mortgagor, with notice to Stephen Burlingame, terre-te-
nant of the land by purchase from Russel Smith.   The defendants
deny, as does Tharp, who has filed a protest on the record, the title of

[Tharp v. Smith.]

the plaintiff to the mortgages in suit. A number of questions have been made and argued by the counsel, on which the court decline at this time to give any opinion. The view which the court takes of one point in the cause, makes it unnecessary ; as we are unanimously of the opinion, that the plaintiff has shown no title to the mortgages, and that he cannot sustain this suit. The point arises on the answer of the court to the fourth proposition of the defendant's counsel. In the agreement of the 8th of August 1817, Strawbridge agrees to transfer to Tharp certain bonds, mortgages, &c., among which is included the mortgage of Bethlehem Thompson to Strawbridge. It may not, it is true, be an absolute transfer of the right at the date of the agreement. The parties say it is with the intention of making a transfer. They seem to contemplate an absolute transfer of Strawbridge's whole right, title and interest, only when the last payment shall be made. Until payment, Strawbridge would appear to retain a lien on the securities in the hands of Tharp. But, however this may be, in the meantime Strawbridge authorises Tharp to *collect*, receive and apply to his own use all or any part of the money due, under the said securities, by a full and ample power of attorney and the possession of the securities. Tharp has a power coupled with an interest, and in this particular it is unlike the ordinary case of an agent empowered to collect debts for his principal. Tharp has not only the power to collect, but to apply the proceeds to his own use. He is not, by any fair construction of the agreement, restrained in the mode of collection. It would be a narrow construction of the instrument to confine him to the receipt of money only. One of the objects was to enable Tharp to raise funds to comply with the contract, and for this purpose it was necessary for him to exercise his own discretion, by compounding with the debtors, or taking goods, land, or any other commodity, in payment. The clause in question was intended for the benefit of Tharp. If Tharp had received the price in money, the money would have been his by the express terms of the agreement, and if the same money had afterwards been laid out in land, it would not be pretended he would have been, under the circumstances of this case, Strawbridge's trustee. Nor can we believe that the case is altered, if he, in the first instance receives land in payment, instead of money. In the case at bar, Tharp purchases the mortgaged premises for 1000 dollars. No money is paid by him to the sheriff, but in lieu thereof, as he had a perfect right to do, he takes a deed from the sheriff to himself, and credits the amount of his bid on the mortgage. Was he a trustee for Strawbridge at that time, and we think clearly that he was not, the land which he received in payment was as much his property as if the debt had been received in cash, or in any article of personal property.

At the time of the sheriff's sale it does not appear that Tharp was in default. At any rate, at that time, Strawbridge had manifested no intention to rescind the contract; for although he commenced his

[Tharp v. Smith.]

suit in the district court for damages the 28th of November 1818, which was after the sale, let it be remarked, it was not until the 4th of September 1819 that Strawbridge gave notice that he had revoked the letter of attorney to Tharp, and warned the debtors not to make further payments to him. When the letter of attorney was revoked does not appear; it is presumed to have been about the time of the notice of the 4th of September. On the 16th of September 1818, the contract between Strawbridge and Tharp was in full force, by consent of both parties; nor is there any proof, from which we can infer, that Strawbridge ever intended to interfere with or question that transaction. It was made in good faith and in accordance with the agreement of the 8th of August. And this view of the case is corroborated by the testimony of Judge Morris, who was examined as a witness. Strawbridge, in the conversation, spoke of it as a transfer of the interest to Tharp, and assigned as the reason for the agreement assuming the shape that it did, that Tharp might enforce the collection of the debts without odium, acting ostensibly as the agent or attorney of Strawbridge. As then the absolute property in the land was vested in Tharp, by the sheriff's deed, the mortgages, as a consequence, vest in him also, and if so, it is obvious there was nothing in Strawbridge or his assignees, which they could transfer to Billings. This is in truth a contest between Tharp and Billings. It is of but little consequence to the defendants, if they have the money to pay, whether they are compelled to pay Tharp or Billings.

Judgment reversed.